IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Case No. 19-cv-00236-DDD

PETER GEORGE NOE,

    Applicant,

v.

ANDRE MATEVOUSIAN, Warden,

    Respondent.

## ORDER ON AMENDED APPLICATION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

This matter is before the Court on the Amended Application for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 6), filed *pro se* by Applicant Peter George Noe. On April 23, 2019, the Court ordered Respondent to show cause why the Amended Application should not be granted. (*See* Doc. 14.) Respondent filed a Response (Doc. 20), on May 14, 2019, and Mr. Noe filed a Reply to the Response (Doc. 21) on May 18, 2019. After reviewing the pertinent portions of the record in this case, including the Amended Application, the Response, and the Reply, the Court concludes that the Amended Application should be denied, and the action dismissed.

## BACKGROUND

Mr. Noe is a prisoner in the custody of the Federal Bureau of Prisons (BOP) and currently incarcerated at the United States Penitentiary in Florence, Colorado. He sets forth two claims that challenge two different Incident Reports. (Doc. 6 at 2-7.)

In Claim One, Mr. Noe asserts that on March 12, 2018, he received two mail rejections based on third party inmate-to-inmate correspondence. (Doc. 6 at 2.) Mr. Noe contends that when he challenged the rejections by filing a request for administrative remedy, the Special Investigative Services ("SIS") Department retaliated by filing IR No. 3127229, charging him with engaging in the prohibited act of communicating gang affiliation. (*Id.* at 2-3, 16.) Mr. Noe argues the "court" recently ruled that a prison may not reject incoming correspondence just because it contains information about another inmate. (*Id.* at 3.) He further argues that the SIS Department told him that SIS staff has discretion when interpreting what is considered gang involvement, and they determined he was affiliated with a gang that Mr. Noe contends does not exist. (*Id.*)

In Claim Two, Mr. Noe asserts that he received a mail rejection on May 22, 2018, because his outgoing mail was addressed to someone in Riverside, California. (Doc. 6 at 4-5.) Mr. Noe alleges that when a prison staff member, D. Bilbrey, tried to return the mail to him, Mr. Noe faced the surveillance camera during the interaction and said nothing. Nonetheless, Mr. Bilbrey later claimed that Mr. Noe had threatened him, and prison staff issued an incident report. Mr. Noe claims the footage would show that he did not talk to Mr. Bilbrey, contradicting the assertion that Mr. Noe had threatened him. (*Id.* at 6.) Mr. Noe further alleges that the incident report was written in retaliation for his "filing on the S.I.S. dept," and that the hearing officer denied his request to present witnesses to prove his claim. (*Id.*) Mr. Noe also alleges he requested camera footage of the incident but the hearing officer told him the camera does not have audio capabilities. Mr. Noe speculates that the prison staff reviewed the tape, saw that the three officers were lying about his making

2

threatening statements, and for that reason never provided the tapes. (*Id.* at 7.)

## ANALYSIS

### I. Legal Standard

#### A. *Pro se* Standard of Review

The Court must construe the Amended Application and other papers filed by Mr. Noe liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court cannot not act as an advocate for a *pro se* litigant. *Id.*

#### B. 28 U.S.C. § 2241

An application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see also McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief is warranted only if Mr. Noe "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

With respect to prison disciplinary proceedings, "it is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotation marks omitted); *see also Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (citing *Mitchell* in the context of a federal prisoner challenging a prison disciplinary conviction). However, "prison disciplinary proceedings are

not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

> Where a prison disciplinary hearing may result in the loss of good time credits . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent v. Hill*, 472 U.S. 445, 454 (1985). In addition, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* (internal citation and quotation marks omitted). Finally, "an impartial decisionmaker is a fundamental requirement of due process that is fully applicable in the prison context." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (internal quotation marks omitted).

## II. Claim One: IR No. 3126827

"For inmates being punished for misconduct, a liberty interest exists only when the penalty lengthens the confinement or involves an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Meek v. Jordan*, 534 F. App'x 762, 765 (10th Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). An inmate must show that the punishment will "inevitably affect the duration of his sentence." *Sandin*, 515 U.S. at 487.

4

The Inmate Discipline Data Chronological Disciplinary Record, attached to the Respondent's Answer, indicates that Mr. Noe was sanctioned in IR No. 3126827 with the loss of phone privileges for seven days for "communicating gang affiliation." (Doc. 20-1 at 15.) Mr. Noe concedes in his February 7, 2019 Application that he was not sanctioned with the loss of good time credits in IR No. 3126827. He appears to request, however, that this Court overlook this issue, "hold this claim" until he violates the "rule" again, and at that time, because he would be subject to a sanction of 27 days of good time for a second offense, hold a hearing. (Doc. 6 at 9-10.)

The Court finds no basis for staying the review of this incident report until Mr. Noe commits a like offense in anticipation of being sanctioned with the loss of good time. The only proper issue before this Court is resolution of the implications of IR No. 3126827. Because the sanctions in IR No. 3126827 do not inevitably affect the duration of Mr. Noe's sentence, this claim will be dismissed as improperly asserted in this habeas corpus action.

### III.     Claim Two: IR No. 3127229

The Inmate Discipline Data Chronological Disciplinary Record indicates that Mr. Noe was sanctioned with the "loss of twenty-seven days of good conduct time, and other privileges in IR No. 3127229 for threatening bodily harm. (*See* Doc. 20-1 at 15.) Mr. Noe asserts that his due process right to present evidence was violated in his disciplinary hearing.

As set forth above, in support of an alleged due process violation, Mr. Noe contends that (1) he received the incident report in retaliation for his "filing on the SIS dept"; (2) he did not threaten staff, which could

5

have been seen by footage from the surveillance camera that would show he did not talk during the incident; and (3) the Disciplinary Hearing Officer (DHO) denied Mr. Noe's request for witnesses and a viewing of the surveillance camera footage. (Doc. 6 at 6-7.)

**A. Mr. Noe's Claim of Retaliation**

Factual allegations that a DHO's decision was retaliatory may suffice to establish a due process claim. *See Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). However, "mere allegations of constitutional retaliation will not suffice;" Mr. Noe "must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1991). Mr. Noe also must "prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Maschner*, 899 F.2d at 949-50.

Mr. Noe fails to allege specific facts in support of his retaliation claim. He asserts that the DHO refused to allow him to present evidence to show there was retaliation and an "ongoing thing between [him] and the SIS over [his] mail," which would have been corroborated by administrative remedy requests and testimony by B. Torres. (Doc. 6 at 6-7.) Mr. Noe's retaliation claims, raised in the February 7 Amended Application, as they pertain to IR No. 3127229, do not demonstrate retaliation.[1]

---

[1] In his Reply, Mr. Noe for the first time speculates that he was retaliated against because of *Cunningham v. Bureau of Prisons*, No. 12-cv-1570-CMA-MEH, a case filed in this Court by a group of inmates (which did not include Mr. Noe) and settled in 2016. Mr. Noe claims that as a result of *Cunningham* the BOP brought in a new warden who has estab-

**B. Mr. Noe's Claim Concerning Calling a Witness**

As stated above, a prisoner is permitted, when consistent with institutional safety and correctional goals, to call witnesses. *Hill*, 472 U.S. at 454 (citing *Wolff*, 418 U.S. at 563-67). A prisoner, however, does not assert a due process claim for failure to permit witness testimony unless he demonstrates that the testimony "would have affected the outcome of his case." *Chesson v. Jaquez*, 986 F.2d 363, 366 (10th Cir. 1993). A denial of a witness is not a *per se* violation of due process in the context of prison disciplinary proceedings. *See Wolff*, 418 U.S. at 566–67.

The Notice of Discipline Hearing and the DHO Report note that Mr. Noe requested Ms. Torres as a witness in IR No. 3127229, because she "knows what has been going on w/me for this stuff w/this officer." (Doc. 20-2 at 13 and 22.) The DHO denied Mr. Noe's request to call Ms. Torres, however, on the ground that the information Mr. Noe claimed Ms. Torres would provide was irrelevant. (*Id.* at 13.)

There is no indication that Ms. Torres's testimony would have altered the outcome. Mr. Noe asserts that he and Mr. Bilbrey do not get along and that he has filed administrative remedies against Mr. Bilbrey regarding the holding of his mail, but he fails to identify the substance of those administrative remedies and fails to state specifically what Ms. Torres's testimony would have been. Mr. Noe therefore has failed to

---

lished new procedures to "torture" inmates, and that to keep these procedures from the public the BOP has adopted a policy of rejecting mail. (Doc. 21 at 2.) Because it was first raised in a reply brief, the Court need not address this speculative argument. *See United States v. Mora,* 293 F.3d 1213, 1216 (10th Cir. 2002).

show that the DHO's refusal to call Ms. Torres as a witness was a due process violation.

### C. Mr. Noe's Request Concerning Video

The Tenth Circuit has found an inmate's due process rights are violated when the DHO unjustifiably refuses an inmate's request to produce and review a video tape. *See Howard v. United States Bureau of Prisons*, 487 F.3d 808 (10th Cir. 2007). In *Howard*, the inmate requested review of the videotape tapes prior to the hearing and expressly requested that the DHO review the videotape at the hearing. *Id.* at 810-11. The DHO declined to review the tapes, and the inmate raised the denial of the DHO's refusal to review the videotape in his administrate appeal. *Id.* at 811.

Here, the DHO did not refuse to review a videotape. She determined that it had automatically been deleted because so much time had passed between the incident and Mr. Noe's request to see it. (Doc. 20-2 at 14.) There is no basis for finding the DHO's determination was unjustifiable. There is no evidence to support his speculation that the tape was not provided because prison staff had reviewed it and knew that it supported Mr. Noe's version of events.

### D. The Findings of the DHO Were Supported by Some Evidence

"Ascertaining whether the [some evidence] standard is satisfied does not require examination of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added). A disciplinary board's decision can be upheld by a reviewing court "even if the

evidence supporting the decision is 'meager.'" *Mitchell*, 80 F.3d at 1445 (quoting Hill, 472 U.S. at 457).

The Court concludes this standard has been met. First, the DHO relied on the memoranda written by two other prison staff members, who were with Mr. Bilbrey at the time of the incident at issue. ECF No. 20-2 at 19-20. The memoranda confirm Mr. Bilbrey's assertion that Mr. Noe made threatening statements to him. Second, even if there is a question regarding who was responsible for the delay in providing the video, the DHO's finding that the video would not provide an audio recording of the incident is justifiable based on the following. *Id.*

In the February 7 Amended Application, Mr. Noe asserts that he told the DHO that he did not say a word to Mr. Bilbrey during the incident, which would have been seen on a video, because he made sure he was facing the camera during the incident. (Doc. 6 at 6.) Nonetheless, the DHO summarized Mr. Noe's statements at the hearing in part as follows:

> You said you wanted [ ] video, because it would show there was not enough time from the beginning of your conversation to the end of the conversation for you to be able to say everything he is claiming you said . . . . You denied telling Mr. Bilbrey you were going to kill him. You said, "I don't have problems with officers; I don't disrespect them. Just me and this guy have a problem. I didn't threaten him."

(Doc. 20-2 at 13.) The DHO report, which Mr. Noe does not challenge, indicates Mr. Noe did not assert to the DHO that he faced the camera during the entire incident. The DHO considered Mr. Noe's argument at the hearing that the video would show his conversation was too short for him to have said everything Mr. Bilbrey claims he said. The DHO, how-

9

ever, determined that it was a reasonable conclusion that Mr. Noe continued to make comments once the staff member was leaving the area. (*Id.* at 14-15.)

Finally, the DHO considered Mr. Noe's disciplinary history, which includes a prior charge for threatening another with bodily harm, thus showing a propensity to threaten staff members. (*Id.* at 14.) Mr. Noe was found guilty of threatening a staff member with bodily harm in IR No. 2903995 on October 28, 2016. (*See* Doc. 20-1 at 16.) Mr. Noe does not deny the disciplinary history identified by the DHO and set forth in the attachments to the Response.

Based on the above findings, there was some evidence in the record to support the conclusion reached by the DHO that Mr. Noe committed the offense he was charged with in IR No. 3127229. The Court, therefore, finds that the DHO findings meet the standard set forth in *Mitchell*, 80 F.3d at 1445.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Mr. Noe is not entitled to federal habeas relief. Accordingly, it is **ORDERED** that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, ECF No. 6, filed by Mr. Noe on February 7, 2019, is denied and the action is dismissed with prejudice. Because the Court further finds that Mr. Noe's claims are not supported by reasoned, nonfrivolous argument on the law and facts, it is **FURTHER ORDERED** that it is certified pursuant to 28 U.S.C. § 1915(a)(3) any appeal from this Order is not taken in good faith, and, therefore, in forma pauperis status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962); *Debardeleben v. Quinlani*, 937 F.2d 502, 505 (10th Cir. 1991). If

Mr. Noe files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED: November 8, 2019

BY THE COURT:

_____
Daniel D. Domenico
United States District Judge